Chief Justice Robeutson,
delivered the opinion of the court.
At the October term, 1825, the county' court of Harrison made an order, declaring that James Patton should be the collector of the levy for that *249 county; whereupon,he with William Moore and others as his sureties, acknowledged a bond to the justices of the said county, for securing the collection of the levy._L
Bond for collection of th® c0™*y the justice's, composing ■ , ?°unty court, Ta 1
In July, 1827, Lair and Chambers as creditors of the said county, obtained a judgment by motion in the said county court, against Patton and his sureties, for.$‘489; to reverse which, this writ of error is prosecuted.
The record exhibits no evidence, except the order of appointment and the bond.
Only two objections are made to the judgment by the plaintiffs in error.
1. That the bond is invalid as a statutory obligation, because it was not made payable to the commonwealth.
2. That the motion was not maintainable, because the county court had no authority to appoint a collector of the county levy.
The first objection is scarcely plausible. The act of 1810, (II Dig. 977, 8th sec.) which directs that certain bonds shall be made payable to the commonwealth, certainly includes the bond executed by Patton and his sureties. But the 9th section of the same act c ontains a proviso, declaring that bonds, which shall be executed conformably to pre-existing lanrs, shall be valid, not-13 tvithstanding the direction given in the 8th sec. as to the mode of executing them. The bond in this case, was executed according to the provisions of an act of 1797, (II Dig. 856.)
It is therefore, valid, unless the act-of 1797, was re pealed; and even if the act of 1799, (II Dig. 857) should be considered a constructive repeal of it, nevertheless as the act of 1799, which hus not been repealed, directs the bonds of sheriffs for the collection of the county levies, to he executed to the county court, this bond executed to the justices composing the county court is valid, unless it can be invalidated by establishing one branch of the second objection, which is in effect, that the bond was not executed by the sheriff. The whole case therefore, will depend on the disposition which shall be made of the last objection.
if Patton was not the sheriff of Harrison, when he. was appointed collector, and if the county court had no authority to appoint a collector because the sheriff was, *250 ex officio, the collector, then the bond executed by Patton as collector would not be a valid statutory obligation ;• . and consequently, whatever it might be on common law principles, it could not be a sufficient foundation for a judgment on motion.'
Obligor in bond for collection of county levy, is estopped to deny that he ivas collector; but not es-topped to deny that he was sheriff.
Power of county court to appoint collector of the county-levy.'
Act' of 1797,' relative to collectors of ceuntylevy, not totally repealed by act of 1799.
Patton is not estopped by his bond, to deny that he was sheriff. lie is only estopped to deny, that he was collector; for he is described in the bond as collector..' But the bond does not show necessarily, that he was not - sheriff. If no other person than the sheriff could be üde jure” the collector, it might be presumed, that Patton was the sheriff, because there is nothing in the record irreconcilable with the supposition, that he was sheriff, and it should not be presumed, that the'county coui’t arrogated power which did not belong to it; and' it is at least very questionable, whether (if it be conceded, that the sheriff alone could he the collector) the fact that Patton acted as the collector, should not render’ him sheriff pro hac vice, or sheriff “de facto;” and therefore, estop him to deny that he was sheriff.'
We should be inclined to the opinion therefore, that,' as there was no proof, that any other person that Patton was the sheriff, he should be considered the sheriff, even if no other person could be the collector.
But we áre of the opinion, that the county court had' power to appoint a collector who was not the sheriff.
The third section of the act of 1799 {supra) declares that “it shall be the duty of every sheriff to collect the' levies Mid by the county court of his County, and shall enter into bond with security, therefor to his said county court.”
The fourth section of the act of 1797 (supra) authorized the county courts to appoint thé sheriffs, or other persons collectors of the levies; and prescribed a motion' on the bond as a proper remedy for a county creditor against such collector.
The plaintiffs insist, that the act of 1799 is incompatible with that of 1797, and therefore, operates as a constructive repeal of it. This is not our opinion. The two acts are not entirely irreconcilable, arid therefore,' the first is not totally repealed by the last. So far as' they maybé esséntially incongruous,'the Ihst- must pro-' *251 yail. But the first must remain in force, so far as it may not be repugnant to the end, and policy of the last.
Before i-nr^siteriff was ex officio, the collector °evjr>e 00un y
Act of 1799, th^laV, prior to the ’ act of 1797.
If these two acts were the only evidences of the intention of the legislature on this subject, there might be much force in the argument, that the act of 1797 was totally repealed by that of 1799. But other acts must also be considered; and if the whole be construed in pari materia, the result will be, that the county courts may still appoint collectors of the levies.
Before the passage of the act of 1797, the' sheriff was, ex officio, the collector of the county levy. The condition of his official bond, as prescribed by the act of 1792, is among other things, that “he shall, by himself or deputies well and truly collect all taxes and duties directed by law, to be collected in his county, during the time of his continuance in office, &c.
This is sufficiently comprehensive to show, that the sheriff was deemed ex officio, the collector of the county levy. .But the thirteenth section of the same act will leave no room for doubt. It declares that “every sheriff shall receive and collect the taxes due the com-; monwealth, and shall also collect all levies? &c,
' The thirteenth section of the act for establishing a permanent revenue, declares, that “if the sheriff of any county shall neglect or refuse to give such bond (for the taxes) a collector of the taxes, shall be ap: pointed for that county;” I Littell’s laws, 71.
A reasonable and practicable construction of these provisions, would vest, in the county courts, power to appoint collectors of the levies, if the sheriffs failed to execute the required bonds.
Prior to the act of 1797, it was as clearly the duty of the sheriff, ex officio, to collect the county levy, as it can be since the act of 1799. The latter act is only declaratory of what the law was before the change effected by the act of 1797.
The third section of the act of 1799, might have been deemed proper to avoid any doubt or perplexity that might have arisen under the new constitution, then recently adopted; or to remove any doubt that might have been- entertained, as to the duty of sheriffs to col *252 lect the levies, unless they hah been specially appointed collectors by the county courts; or perhaps the county courts some limes neglected to make appointments, and therefore, for such contingencies, it may have been supposed proper to declare, by law, that it should be the duty of the sheriffs ex officio, to collect the levy; and because it had been questioned, or lest it might be doubted, whether the ordinary official bond, required by the act of 1792, would, since the act of 1797. secure the collection of the levy by the sheriff, a bond for that especial purpose was required by the act of 1799.
JVbiv, as before act of 1797, sheriff is ex officio collector of the county levy^ provided he will execute the bond required.
These considerations or some of them, must have occasioned the act of 1799; and since its passage, the eounty courts have as much power to appoint collectors as they had befo: e 1797. So much of the act of 1797 therefore, as is consistent with the pre-existing law, cannot be inconsistent with the third section of the act of 1799. The right to appoint collectors, and the motion given by the fourth section of the act of 1797, are' perfectly consonant with the law as it stood before that section was enacted. Under the act of 1797 it was the duty of the county courts to appoint collectors. If they made no appointments, it would have been somewhat questionable, whether it would hare been the duty of the sheriff to act. if other persons than the sheriffs had been appointed, the latter could not have acted. But now, as before the act of 1797, the sheriff is 'ex officio the collector, provided he will execute the bond required'; but otherwise, a collector may be appointed by the county court, under the express sanction Of the act of 1797, and under the implied authority of the pre-existing laws, and a, motion against such collector may be sustained. To this extent, the act of 1797 is not repealed.
Can it be believed, that if the sheriff refuse to collect the levy, or refuse' to give bond for securing it, the. county court will have no power, to secure the collection of it1? Such, a power existed before 1797; what has taken it away? Not the act of 1799; such was notits object, if it had been, the act would have been improvident and pernicious.
The collection of the county levy is sometimes vexatious and unprofitable; and consequently, fhq sheriff *253 aiay desire to be exonerated from the duties and reSponsibilities incident to it. Why should not the county court have the rsgbt in such a case, to appoint some other person who may desire the appointment, and be benefitted by it, and who may be better qualified for a prompt and complete collection, than the sheriff could be expected to be1? Several acts of assembly passed since 1799, in speaking of the collector of the levy, usq the words “sheriff or collector;” and the act of 1799, directs the county court to appoint “inspectors, colled* ore,” &?c.
Unjess ¿t fl„_ pear that the sheriff objected mtment of another collector, it will ty court transcended its Power-
John Trimble and Haggin for plainliffs; Monroe, for defendants.
We would admit, that when the sheriff shall desire to collect the county levy, and be willing and able to give satisfactory security, another person should not be appointed a collector. The sheriff has a right to the emoluments, if he will comply with the requisitions of the law. But if he shall refuse or be unable to give the required bond, or shall be unwilling to be collector, or shall be unable to make the collection, the county court may have the levy collected by some other person. When the county court makes an appointment, no person, except the sheriff, has a right to complain; and it is not to be presumed, that a county court will ever make an appointment, unless it be so obviously proper, as to leave no reasanable pretext for complaint.
If Patton was not the sheriff as well as the collector of Harrison, as it does not appear that the sheriff had any cause to object to his appointment, or did object to it, we will presume that the county court did not tran-spend its authority, when it appointed him. And as it does not appear, that any other person collected the levy, or that Patton was not permitted to collect it, we will presume that he collected it, or that if he did not, he should be held accountable for it. He has not shown that he was notsheriff; nor that the sheriff claimed the right to be the collector, or was in fact the collector. We therefore, consider Patton as the collect- or, “de facto et de jure.”
And therefore, the judgment of the county court must be affirmed.